1
2
3
4
5
6                          **UNITED STATES DISTRICT COURT**
7                               **DISTRICT OF NEVADA**
8
9   ANTHONY DOUGLAS ECHOLS,              )
                                          )
10                  Petitioner,           )        3:10-cv-00340-LRH-VPC
                                          )
11  vs.                                   )        **ORDER**
                                          )
12  JAMES BENEDITTI, *et al.*,            )
                                          )
13                  Respondents.          )
    _____/
14
15          This action is a petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254, by a
16  Nevada state prisoner represented by counsel.  This matter comes before the Court on the merits of
17  the petition.
18  **I.      Procedural History**
19          On October 23, 2000, the State charged petitioner in the First Judicial District for the State of
20  Nevada, by information, with Count I, open murder with the use of a deadly weapon and Count II,
21  burglary with the use of a deadly weapon.  (Exhibit 7).[1]  Petitioner pleaded not guilty to both counts.
22  (Exhibit 12, at p. 1).
23          On December 18, 2000, petitioner filed a motion to dismiss the charges and a pre-trial habeas
24  petition on the basis that one of the State's theories of murder – felony murder based on burglary –
25  was invalid.  (Exhibits 18 & 19).  After briefing and argument, the trial court denied the motion to
26  dismiss but granted the pre-trial petition and ordered the State to file an amended petition.  (Exhibit
27  _____
28          [1]  The exhibits referenced in this order are found in the Court's record at ECF Nos. 16-20.

34).  The State appealed.  (Exhibit 39).  The Nevada Supreme Court reversed the order of the state district court.  (Exhibit 53).

A jury trial commenced on January 6, 2003.  (Exhibit 60).  After an eight-day trial, the jury convicted petitioner of burglary with the use of a deadly weapon and first-degree murder with the use of a deadly weapon.  (Exhibit 71, at p. 101).  On January 16, 2003, after a one-day penalty hearing, the jury sentenced petitioner to life in prison without the possibility of parole for first-degree murder.  (Exhibit 79, at p. 71).  That same day, the trial court sentenced petitioner to a consecutive term of life without the possibility of parole for the deadly weapon enhancement, and a concurrent term of 2 to 15 years for burglary while in possession of a firearm or deadly weapon.  (*Id.*, at pp. 73-74); Exhibit 78.  The judgment of conviction was filed on January 16, 2003.  (Exhibit 78).

Petitioner appealed from his conviction.  (Exhibit 81).  On September 3, 2004, the Nevada Supreme Court entered an order affirming petitioner's convictions.  (Exhibit 101).  Remittitur issued on December 7, 2004.  (Exhibit 105).

On December 29, 2004, petitioner filed a motion for a new trial based on newly discovered evidence in the state district court.  (Exhibit 106).  On December 5, 2005, the district court denied the motion for a new trial.  (Exhibit 125).  Petitioner appealed.  (Exhibit 127).  On March 2, 2007, the Nevada Supreme Court affirmed the denial of the motion.  (Exhibit 145).

On December 1, 2005, while the motion for a new trial was pending in the state district court, petitioner filed a post-conviction habeas petition in the state district court.  (Exhibit 121).  With the assistance of counsel, a supplemental petition was filed on July 24, 2006.  (Exhibit 139).  Following an evidentiary hearing (Exhibits 162 & 163), the state district court denied the petition on December 8, 2008.  (Exhibit 164).

Petitioner appealed from the denial of his state post-conviction habeas petition.  (Exhibit 165).  On May 10, 2010, the Nevada Supreme Court affirmed the denial of the post-conviction petition.  (Exhibit 173).  Remittitur issued on June 4, 2010.  (Exhibit 174).

Petitioner has filed a federal petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  (ECF No. 6).  Petitioner alleges that his constitutional rights were violated by: (1) counsel's elicitation of opinion testimony from the venire and failure to object, request a cautionary instruction,

move for mistrial, or seek individual voir dire; (2) counsel's failure to investigate or present expert

testimony regarding Paxil during the guilt phase of trial; (3) counsel's failure to investigate or

present expert testimony regarding Paxil during the penalty phase of trial; (4) the trial court's denial

of a motion for new trial; (5) the trial court's admission of specific sentencing recommendations

made by the victim's family; (6) the trial court gave an "executive clemency" instruction to the jury

that was an improper statement of law; (7) the trial court erred when it denied a challenge for cause

to a prospective juror who had prejudicial knowledge of the case from extrajudicial sources; (8)

prosecutorial misconduct and trial counsel's failure to object to the same; (9) insufficiency of the

evidence to support his convictions.  (Petition, ECF No. 6).  Respondents have filed an answer to the

petition.  (ECF No. 15).  Petitioner has filed a traverse.  (ECF No. 21).  The Court now resolves the

merits of the petition.

## II.      Federal Habeas Corpus Standards

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), at 28 U.S.C. § 2254(d),

provides the legal standard for the Court's consideration of this habeas petition:

> An application for a writ of habeas corpus on behalf of a person in
> custody pursuant to the judgment of a State court shall not be granted
> with respect to any claim that was adjudicated on the merits in State
> court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the State
> court proceeding.

The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications

in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect

to the extent possible under law."  *Bell v. Cone,* 535 U.S. 685, 693-694 (2002).  A state court

decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C.

§ 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme

Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from

a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme

1    Court's] precedent." *Lockyer v. Andrade,* 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor,* 529

2    U.S. 362, 405-406 (2000) and citing *Bell v. Cone,* 535 U.S. 685, 694 (2002)).  The formidable

3    standard set forth in section 2254(d) reflects the view that habeas corpus is "'a guard against extreme

4    malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction

5    through appeal." *Harrington v. Richter,* 562 U.S. ___, ___, 131 S.Ct. 770, 786 (2011) (quoting

6    *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979)).

7         A state court decision is an unreasonable application of clearly established Supreme Court

8    precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct

9    governing legal principle from [the Supreme Court's] decisions but unreasonably applies that

10   principle to the facts of the prisoner's case." *Lockyer v. Andrade,* 538 U.S. at 75 (quoting *Williams*,

11   529 U.S. at 413).  The "unreasonable application" clause requires the state court decision to be more

12   than merely incorrect or erroneous; the state court's application of clearly established federal law

13   must be objectively unreasonable.  *Id.* (quoting *Williams*, 529 U.S. at 409).  In determining whether a

14   state court decision is contrary to, or an unreasonable application of federal law, this Court looks to

15   the state courts' last reasoned decision.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991);

16   *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000), *cert. denied*, 534 U.S. 944 (2001).

17        In a federal habeas proceeding, "a determination of a factual issue made by a State court shall

18   be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of

19   correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).  If a claim has been

20   adjudicated on the merits by a state court, a federal habeas petitioner must overcome the burden set

21   in § 2254(d) and (e) on the record that was before the state court.  *Cullen v. Pinholster*, 131 S.Ct.

22   1388, 1400 (2011).

23   **III.    Discussion**

24        **A.  Ground One**

25        Petitioner claims that his constitutional rights were violated by trial counsel's elicitation of

26   testimonial opinions from the venire that "two shots to the head cannot be accidental," and counsel's

27

28                                                    4

1  failure to object, seek a cautionary instruction, move for a mistrial, or request individual voir dire

2  beforehand.  (Petition, at pp. 4-5, pp. 16-25).

3        Ineffective assistance of counsel claims are governed by the two-part test announced in

4  *Strickland v. Washington,* 466 U.S. 668 (1984).  In *Strickland*, the Supreme Court held that a

5  petitioner claiming ineffective assistance of counsel has the burden of demonstrating that counsel's

6  performance was unreasonably deficient and that the deficient performance prejudiced the defense.

7  *Williams v. Taylor,* 529 U.S. 362, 390-391 (2000) (citing *Strickland,* 466 U.S. at 687).  To establish

8  ineffectiveness, the defendant must show that counsel's representation fell below an objective

9  standard of reasonableness.  *Id.*  To establish prejudice, the defendant must show that there is a

10  reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

11  would have been different.  *Id.*  A reasonable probability is "probability sufficient to undermine

12  confidence in the outcome."  *Id.*  Additionally, any review of the attorney's performance must be

13  "highly deferential" and must adopt counsel's perspective at the time of the challenged conduct, in

14  order to avoid the distorting effects of hindsight.  *Strickland,* 466 U.S. at 689.  It is the petitioner's

15  burden to overcome the presumption that counsel's actions might be considered sound trial strategy.

16  *Id.*

17        Ineffective assistance of counsel under *Strickland* requires a showing of deficient

18  performance of counsel resulting in prejudice, "with performance being measured against an

19  'objective standard of reasonableness,'. . . 'under prevailing professional norms.'" *Rompilla v.*

20  *Beard,* 545 U.S. 374, 380 (2005) (quotations omitted).  If the state court has already rejected an

21  ineffective assistance claim, a federal habeas court may only grant relief if that decision was contrary

22  to, or an unreasonable application of the *Strickland* standard.  *See Yarborough v. Gentry,* 540 U.S. 1,

23  5 (2003).  There is a strong presumption that counsel's conduct falls within the wide range of

24  reasonable professional assistance.  *Id.*

25        The United States Supreme Court has described federal review of a state supreme court's

26  decision on a claim of ineffective assistance of counsel as "doubly deferential." *Cullen v. Pinholster*,

27  131 S.Ct. 1388, 1403 (2011) (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 112-113, 129 S.Ct.

28  1411, 1413 (2009)).  In *Cullen v. Pinholster*, the Supreme Court emphasized that: "We take a 'highly

1  deferential' look at counsel's performance . . . . through the 'deferential lens of § 2254(d).'" *Id.* at

2  1403 (internal citations omitted).  Moreover, federal habeas review of an ineffective assistance of

3  counsel claim is limited to the record before the state court that adjudicated the claim on the merits.

4  *Cullen v. Pinholster*, 131 S.Ct. at 1398-1401.  The United States Supreme Court has specifically

5  reaffirmed the extensive deference owed to a state court's decision regarding claims of ineffective

6  assistance of counsel:

> Establishing that a state court's application of *Strickland* was
> unreasonable under § 2254(d) is all the more difficult.  The standards
> created by *Strickland* and § 2254(d) are both "highly deferential," *id.* at
> 689, 104 S.Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n.7, 117
> S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in
> tandem, review is "doubly" so, *Knowles*, 556 U.S. at ___, 129 S.Ct. at
> 1420.  The *Strickland* standard is a general one, so the range of
> reasonable applications is substantial.  556 U.S. at ___, 129 S.Ct. at
> 1420.  Federal habeas courts must guard against the danger of equating
> unreasonableness under *Strickland* with unreasonableness under
> § 2254(d).  When § 2254(d) applies, the question is whether there is
> any reasonable argument that counsel satisfied *Strickland's* deferential
> standard.

14  *Harrington v. Richter*, ___U.S. ___, 131 S.Ct. 770, 788 (2011).  "A court considering a claim of

15  ineffective assistance of counsel must apply a 'strong presumption' that counsel's representation was

16  within the 'wide range' of reasonable professional assistance."  *Id.* at 787 (quoting *Strickland*, 466

17  U.S. at 689).  "The question is whether an attorney's representation amounted to incompetence under

18  prevailing professional norms, not whether it deviated from best practices or most common custom."

19  *Id.* (internal quotations and citations omitted).

20      As to Ground One of the federal petition, petitioner raised the issue in his state post-

21  conviction habeas petition.  (Exhibit 139, at pp. 6-10).  The state district court found that trial

22  counsel's actions were the result of reasonable tactical decisions.  (Exhibit 163, at pp. 38-40; Exhibit

23  162, at p. 2).  In considering this claim on appeal from the denial of the post-conviction habeas

24  petition, the Nevada Supreme Court ruled:

> First, appellant argues that his trial counsel was ineffective for failing
> to question juror venire members in private and individually, seek a
> cautionary instruction, or move for a mistrial after the venire members
> gave their opinion on appellant's theory of the defense.  Appellant fails
> to demonstrate that his trial counsel's performance was deficient or
> that he was prejudiced.  Trial counsel testified at the evidentiary
> hearing that, while questioning venire members in private crossed his

1
2
3
4
5
6
7
8
9

mind, he did not feel it was appropriate in this case and felt that he needed to begin to explain an accidental discharge of the rifle during voir dire, so the jurors would not be surprised by the topic during trial. "Tactical decisions [of counsel] are virtually unchallengeable absent extraordinary circumstances, <u>Ford v. State</u>, 105 Nev. 850, 853, 784 P.2d 951, 953 (1989), and appellant fails to demonstrate any such circumstances here. Further, appellant fails to demonstrate that the venire members' opinions and statements about experience with firearms amounted to expert opinion testimony or unduly biased the venire members. <u>Mach v. Stewart</u>, 129 F.3d 495, 497-98 (9th Cir. 1997, <u>superseded on other grounds</u>, 137 F.3d 630 (9th Cir. 1998). Considering appellant's insistence that the shooting was accidental, appellant fails to demonstrate he was prejudiced by his counsel's decision to question the venire members together on their willingness to consider an accidental shooting defense rather than in private and individually. Therefore, the district court did not err in rejecting these claims.

10      (Exhibit 173, at p. 2).

11          The Nevada Supreme Court applied the appropriate *Strickland* standard to petitioner's claim

12      of ineffective assistance of counsel. The Nevada Supreme Court cited *Ford v. State*, 105 Nev. 850,

13      853, 784 P.2d 951, 953 (1989), for the rule that "[t]actical decisions [of counsel] are virtually

14      unchallengeable absent extraordinary circumstances." (Exhibit 173, at p. 2). The *Ford* case, in turn,

15      cites *Strickland* for that rule. *Ford*, 105 Nev. at 853, 784 P.2d at 952. The Nevada Supreme Court

16      properly concluded that trial counsel's decision to present the theory of defense to the jury panel

17      during voir dire, so as to avoid any surprises at trial, was a strategic decision made after investigation

18      of pertinent law and facts. The record indicates that trial counsel was fully apprised of the facts of

19      the case and decided upon his strategy after consulting with both petitioner and with approximately a

20      dozen colleagues. (Exhibit 162, at pp. 11-13, 17-18, 26-28). The Nevada Supreme Court's decision

21      was a reasonable application of *Strickland*.

22          Petitioner relies heavily on *Mach v. Stewart*, 129 F.3d 485 (9th Cir. 1997), *opinion amended*

23      *and superceded by* 137 F.3d 630 (9th Cir. 1998), and argues that the Nevada Supreme Court

24      unreasonably applied the decision to the instant case. In *Mach*, the court addressed a petitioner's

25      claim that his right to an impartial jury was violated when the jury panel was exposed to a potential

26      juror's expert-like statements concerning the veracity of child molestation victims where petitioner

27      was charged with sexual conduct with a minor. *Mach*, 137 F.3d at 631. During voir dire in the

28      *Mach* case, a prospective juror stated that she had worked for three years as a child protective

7

services worker, had expertise in the area of child sexual abuse, and that she had never been involved in a case in which a child's claim of sexual abuse had not been borne out. *Id.* at 633.  Notably, in *Mach*, the juror stated that she had taken child psychology courses, had worked with psychologists and psychiatrists, and had worked with children as a social worker for the state for at least three years. *Id.*  The juror in *Mach* made repeated statements that, in her professional opinion, she had never known a child victim to lie about sexual abuse. *Id.*  The Ninth Circuit determined that when Mach's trial counsel asked for a mistrial, the trial court should have conducted further voir dire to determine whether the panel had in fact been infected by the prospective juror's "expert-like statements." *Id.*  The Ninth Circuit found that: "Given the nature of Bodkin's statements, the certainty with which they were delivered, the years of experience that led to them, and the number of times they were repeated, we presume that at least one juror was tainted and entered into jury deliberations with the conviction that children simply never lie about being sexually abused." *Id.* The court held that this bias violated Mach's right to an impartial jury. *Id.*

The *Mach* decision is distinguishable from the instant case in several aspects.  First, petitioner in the instant case makes a claim of ineffective assistance of counsel, rather than denial of his right to a fair trial by a panel of impartial jurors, as in *Mach*. (Petition, at pp. 4-5, pp. 16-25) (petitioner claims that counsel erroneously elicited testimonial opinions from the venire, failed to object, failed to move for a mistrial, and failed to seek individual voir dire beforehand).  Even ignoring the fact that petitioner in the instant case raises an ineffective assistance of counsel claim instead of a claim that he was denied a panel of impartial jurors, the *Mach* decision differs significantly from the instant case.  In *Mach*, the potential jury member repeatedly expressed "expert-like" opinions regarding the veracity of child victims.  In contrast, in this case, petitioner claims that five prospective jurors, one of whom sat on the jury as an alternate, gave testimonial opinions during voir dire that two shots to the head could not have been accidental.  These comments were not "expert-like" opinions as in *Mach*, but rather, the comments were personal lay opinions and general impressions in response to questions from counsel regarding the purported accidental nature of petitioner's actions.

///

1    Petitioner makes much of the *Mach* court's characterization of the expert-like testimony that

2    tainted the jury as "structural error" requiring automatic reversal.  (Petition, at pp. 19-24).  However,

3    petitioner's citations to *Mach* concerning structural error refer to an earlier version of the opinion

4    that was subsequently amended and superceded.  *See Mach v. Stewart*, 129 F.3d 485 (9th Cir. 1997),

5    *opinion amended and superceded by* 137 F.3d 630 (9th Cir. 1998).  In the amended opinion, the court

6    removed the language finding structural error.  *Mach*, 137 F.3d at 633-34.  The court stated that

7    while the error in that case "arguably rises to the level of structural error," the court fell short of

8    ruling that structural error had occurred.  *Id.*  Instead, the court applied the "harmless error standard"

9    and determined that the error had a substantial and injurious effect in determining the jury's verdict

10   due to the egregious nature of the extraneous influence.  *Id.* a 634.

11   Even assuming that petitioner raises a substantive Sixth Amendment claim that he was

12   denied a panel of impartial jurors, he is entitled to relief only if he can establish that the alleged trial

13   error had a "substantial and injurious effect or influence on the jury's verdict" under the harmless

14   error standard.  *See Musladin v. Lamarque*, 555 F.3d 830, 834 (9th Cir. 2009) (quoting and citing

15   *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993)); *see also Mancuso v. Olivarez*, 292 F.3d 939 (9th

16   Cir. 2002) (applying *Brecht* harmless error standard to claim that petitioner was denied right to

17   impartial jury based on exposure to extrinsic evidence).  The United States Supreme Court has

18   clarified that the AEDPA did not replace the traditional test for prejudice on collateral review, that is,

19   whether the error "had substantial and injurious effect or influence in determining the jury's verdict."

20   *Fry v. Pliler*, 551 U.S. 112, 120 (2007); *see also Pulido v. Chrones*, 629 F.3d 1007, 1012 (9th Cir.

21   2010).  Under the circumstances of the instant case, the lay comments of the prospective jurors

22   regarding whether two shots fired could be accidental were not so egregious that such comments had

23   a substantial and injurious effect or influence on the jury's verdict.

24   Moreover, petitioner's actual claim in the federal petition is one of ineffective assistance of

25   counsel.  In Ground One, petitioner claims that counsel erroneously elicited testimonial opinions

26   from the venire, failed to object, failed to move for a mistrial, and failed to seek individual voir dire

27   beforehand.  (Petition, at pp. 4-5, pp. 16-25).  As outlined earlier in this order, the Nevada Supreme

28   Court's decision was a reasonable application of *Strickland*.  Under *Strickland*, a petitioner must

1  show that his counsel's performance was both unreasonably deficient and that the defense was

2  actually prejudiced as a result of counsel's errors. *Strickland v. Washington*, 446 U.S. 668, 684

3  (1984). The Nevada Supreme Court properly concluded that trial counsel's decision to present the

4  theory of defense to the jury panel during voir dire, so as to avoid any surprises at trial, was a

5  strategic decision. Petitioner has not demonstrated that counsel's performance was unreasonable or

6  that he was prejudiced. Counsel was not ineffective under the deferential *Strickland* standard. *See*

7  *Harrington v. Richter*, 131 S.Ct. 770, 788 (2011). Petitioner has failed to meet his burden of proving

8  that the Nevada Supreme Court's ruling was contrary to, or involved an unreasonable application of,

9  clearly established federal law, as determined by the United States Supreme Court, or that the ruling

10  was based on an unreasonable determination of the facts in light of the evidence presented in the

11  state court proceeding. The Court denies habeas relief on Ground One of the petition.

12      **B. Grounds Two and Three**

13      In Ground Two of the federal habeas petition, petitioner claims that his constitutional rights

14  were violated by trial counsel's failure to investigate the psychological effects of Paxil and present

15  that evidence during the guilt phase of trial. (Petition, at pp. 6-7, pp. 25-37). In Ground Three,

16  petitioner claims that his constitutional rights were violated by trial counsel's failure to present the

17  Paxil evidence in mitigation at the penalty hearing. (Petition, at pp. 7-8, pp. 37-40). Petitioner

18  raised these claims in his state habeas petition. (Exhibit 139, at pp. 10-12). The state district court

19  found that petitioner insisted that the shooting was an accident, and concluded that trial counsel had

20  "employed sound trial strategy in deciding not to pursue a conflicting defense of psychiatric or

21  psychological disorder." (Exhibit 164, at p. 2). On appeal from the denial of the state post-

22  conviction habeas petition, the Nevada Supreme Court rejected petitioner's claim, as follows:

23          Second, appellant argues that his trial counsel was ineffective for
            failing to investigate and present during the trial and penalty hearing
24          psychological and psychiatric evidence regarding the use of Paxil and
            withdrawal from Paxil to show that appellant's thought processes were
25          altered by Paxil. Appellant fails to demonstrate that his trial counsel's
            performance was deficient or that he was prejudiced. At the
26          evidentiary hearing, trial counsel testified that appellant was insistent
            that the shooting was accidental and appellant rejected the idea that he
27          acted under emotional distress. Trial counsel testified that using a
            defense of emotional distress caused by Paxil would have been
28          inconsistent with appellant's testimony during trial. Counsel also

10

1            testified that he made a tactical decision not to present any
psychological evidence during the penalty hearing because he did not

2            want to contradict appellant's testimony during trial.  "Tactical
decisions [of counsel] are virtually unchallengeable absent

3            extraordinary circumstances," Ford, 105 Nev. at 853, 784 P.2d at 953,
and appellant fails to demonstrate any such circumstances here.

4            Further, considering that appellant informed multiple people that the
shooting was accidental at the post-conviction evidentiary hearing,

5            appellant failed to demonstrate a reasonable probability that a defense
based on Paxil withdrawal or mitigation evidence concerning Paxil

6            withdrawal would have a reasonable probability of altering the
outcome of the trial or penalty hearing.  Therefore, the district court

7            did not err in concluding that trial counsel was not ineffective for
failing to investigate and present evidence regarding Paxil use and

8            withdrawal.

9   (Exhibit 173, at pp. 2-3).

10       Petitioner contends that the Nevada Supreme Court unreasonably applied the *Strickland*

11  standard. Petitioner argues that a "Paxil-riddled state of mind" defense was not inconsistent with the

12  "accidental defense" used at trial, because both defenses challenge the *mens rea* element of first-

13  degree murder.  (Petition, at pp. 34-36).  Petitioner testified at trial that he never purposefully fired

14  the gun.  (Exhibit 162, at pp. 21-22).  A psychological defense would have involved arguing that his

15  violent behavior resulted from the use or withdrawal from Paxil  – "Paxil because of its short half-

16  life, has been associated with episodes of both suicidality and violence."  (Petition, at p. 29).  Such a

17  psychological defense would seek to mitigate a deliberate act because the actor was unable to form

18  the specific intent to kill.  This would have undermined petitioner's testimony that the gun fired by

19  accident.  It is objectively reasonable that petitioner's trial counsel would have strategically chosen

20  not to offer evidence of petitioner's psychological or psychiatric state because this would be

21  inconsistent with the theory that the shooting was accidental.  The same analysis applies to the

22  penalty phase.  Although petitioner asserts that counsel should have rehabilitated petitioner to the

23  jury with the use of psychiatric evidence, it is more likely that this would have confused the jury or

24  even eradicated any credibility he had with the jury.  Had counsel presented psychiatric evidence in

25  the penalty phase, it would have been unlikely to change the outcome of petitioner's sentence.

26       Petitioner relies on the opinions in *Turner v. Duncan*, 158 F.3d 449 (1998) and *Bloom v.*

27  *Calderon*, 132 F.3d 1267 (9th Cir. 1997), *cert. denied*, 523 U.S. 1145 (1998), asserting that the

28  instant case involves the very same situation as was found in those cases.  (Petition, at p. 35).  The

*Turner* decision involved defense counsel's "total failure to investigate and prepare a defense to the murder charge." *Turner*, 158 F.3d at 456. While defense counsel in *Turner* failed to arrange for and utilize existing psychiatric information, counsel also failed to conduct any investigation, failed to prepare any defense, failed to investigate the State's case against his client, and failed to prepare his client to testify, amounting to a "complete lack of pretrial preparation." *Turner*, 158 F.3d at 456-57. The same cannot be said about counsel in the instant case – there was not a complete failure to prepare a defense. In *Bloom*, the court found constitutionally deficient performance where defense counsel elected to pursue a psychological defense, but failed to obtain a psychiatric expert until days before trial and failed to prepare his expert before presenting him as a trial witness. *Bloom*, 132 F.3d at 1277. Both *Bloom* and *Turner* are distinguishable from the instant case, in which trial counsel, after investigation of the alternatives, made a strategic decision not to pursue a psychological defense and instead prepared and presented a defense based on an accidental shooting.

The Nevada Supreme Court properly concluded that trial counsel's decision not to present psychiatric or psychological evidence regarding petitioner's Paxil use or withdrawal, both at trial and the penalty hearing, was a tactical decision. Trial counsel testified at the evidentiary hearing that using a defense of emotional distress caused by Paxil or withdrawal therefrom, would have been inconsistent with the theory of the case asserted by petitioner, that the shooting was accidental. Petitioner has not demonstrated that counsel's performance was unreasonable or that he was prejudiced. Counsel was not ineffective under the deferential *Strickland* standard. *See Harrington v. Richter*, 131 S.Ct. 770, 788 (2011). Petitioner has failed to meet his burden of proving that the Nevada Supreme Court's ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. The Court denies habeas relief on Grounds Two and Three of the petition.

### C. Ground Four

Petitioner alleges that his constitutional rights were violated by the trial court's denial of his motion for a new trial based on juror misconduct. (Petition, at pp. 8-9, pp. 40-54). Specifically, petitioner states that: "This case involves the efforts of the victim's friends and family to intimidate

jurors, as they made loud, prejudicial comments in the presence of jurors about the Petitioner during

the jury trial." (Petition, at p. 8). Petitioner's motion for a new trial was denied by the trial court

after a two-day evidentiary hearing and the court's factual finding that "there was no jury misconduct

in this case." (Exhibit 124, at p. 66; Exhibit 125, at p. 2). The Nevada Supreme Court affirmed the

trial court's decision, stating:

> We recently discussed motions for a new trial based on juror
> misconduct, which includes "attempts by third parties to influence the
> jury process," in Meyer v. State, [119 Nev. 554, 561, 80 P.3d 447, 453
> (2003)]. We held in Meyer that:
>
>> [a] denial of a motion for a new trial based upon juror
>> misconduct will be upheld absent an abuse of discretion
>> by the trial court. Absent clear error, the district
>> court's findings of fact will not be disturbed. However,
>> where the misconduct involves allegations that the jury
>> was exposed to extrinsic evidence in violation of the
>> Confrontation Clause, de novo review of the trial
>> court's conclusions regarding the prejudicial effect of
>> any misconduct is appropriate.
>
> We conclude that Echols's case is distinguishable from the facts in
> Meyer, that the abuse of discretion standard is appropriate here, and
> that the district court did not abuse its discretion in denying Echols's
> motion.
>
> The claim in Meyer involved one juror independently investigating the
> case by consulting the Physician's Desk Reference and informing her
> fellow jurors of what she learned there. We held that this constituted
> use of extrinsic evidence in violation of the Confrontation Clause and
> that de novo review of the district court's findings relating to prejudice
> was appropriate. This is not what happened in Echols's case, where
> the alleged misconduct was that jurors may have overheard comments
> by the victim's family about desired verdicts and trial witnesses'
> credibility. Echols presented no evidence that any jurors actually
> overheard any of these comments or took them into the jury room. We
> conclude that the district court acted within its discretion in finding
> that there was insufficient evidence of improper third-party contact
> with jurors and that, even assuming there was contact, it was not
> prejudicial to Echols.

(Exhibit 145, at pp. 4-5) (footnotes omitted). Petitioner claims that the Nevada Supreme Court's

decision was an unreasonable application of *Remmer v. United States*, 347 U.S. 227 (1954).

Petitioner claims that the Nevada Supreme Court erred by not requiring the prosecution to

"overcome the federally-mandated presumption of prejudice" by calling each of the jurors to testify

as to what comments they may have heard. (Petition, at pp. 53-54).

13

1    The *Remmer* case involved an unnamed person remarking to a juror that he "could profit by

2    bringing in a verdict favorable to the [defendant]." *Remmer*, 347 U.S. at 228.  The juror reported the

3    contact to the court and the prosecutors, and the FBI was brought in to conduct an investigation

4    during the trial.  *Id.*  The investigator concluded that the comment was made in jest and the trial

5    court continued, but the defendant was never informed of the incident.  *Id.*  The Court noted that

6    "private communication, contact, or tampering . . . with a juror during a trial . . . is, for obvious

7    reasons, deemed presumptively prejudicial," and found error in the trial court's denial of the

8    defendants' motion for a new trial without holding a hearing.  *Id.* at 229.

9    In this case, the trial court held a hearing on petitioner's motion for a new trial and allowed

10   both the State and the defense to present witnesses.  (Exhibits 123 & 124).  Rather than assuming

11   without evidence that the alleged jury tampering was harmless (like the trial court in *Remmer*), in the

12   instant case, both the state trial court and the Nevada Supreme Court determined that petitioner had

13   failed to show that any tampering had taken place.  The trial court found "that insufficient evidence

14   was presented to establish improper third party contact was had with any juror."  (Exhibit 125, at p.

15   2).  The Nevada Supreme Court found that:  "Echols presented no evidence that any jurors actually

16   overheard any of these comments or took them into the jury room."  (Exhibit 145, at p. 5).  The

17   factual findings of the state court are presumed correct.  28 U.S.C. § 2254(e)(1).

18   Petitioner is entitled to relief only if he can establish that the alleged error had a "substantial

19   and injurious effect or influence on the jury's verdict" under the harmless error standard.  *See*

20   *Musladin v. Lamarque*, 555 F.3d 830, 834 (9th Cir. 2009) (quoting and citing *Brecht v. Abrahamson*,

21   507 U.S. 619, 623 (1993)); *see also Mancuso v. Olivarez*, 292 F.3d 939 (9th Cir. 2002) (applying

22   *Brecht* harmless error standard to claim that petitioner was denied right to impartial jury based on

23   exposure to extrinsic evidence).  This Court finds that petitioner has failed to establish that the

24   alleged incidents of extrajudicial statements made by the victim's family had a substantial and

25   injurious effect or influence on the jury's verdict.  Petitioner has failed to meet his burden of proving

26   that the Nevada Supreme Court's ruling was contrary to, or involved an unreasonable application of,

27   clearly established federal law, as determined by the United States Supreme Court, or that the ruling

28

14

1  was based on an unreasonable determination of the facts in light of the evidence presented in the

2  state court proceeding.  Federal habeas relief is denied as to Ground 4 of the petition.

3  **D. Ground Five**

4  Petitioner claims that constitutional rights to due process of law, a fair trial, and a sentence

5  free from cruel and unusual punishment were violated by the trial court's admission of specific

6  sentencing recommendations made by the victim's family.  (Petition, at pp. 9-10; pp. 54-60).

7  Petitioner presented this claim on direct appeal, and the Nevada Supreme Court ruled as follows:

8  
> Echols argues that the district court abused its discretion by allowing
> victims to recommend the maximum sentence possible.  We disagree.

9  
10 
> In Randall v. State, [109 Nev. 5, 8, 846 P.2d 278, 280 (1993)], we held
> that a victim may express an opinion regarding a defendant's sentence
> in a non-capital case.  In this case, unlike Randall, the jury heard the

11 
> victims' recommendations because the penalty hearing was conducted
> before the trial jury, as required by NRS 175.552(1)(a), for Echols'

12 
> first-degree murder conviction.  We conclude this fact alone is
> insufficient to deviate from the rule set forth in Randall.  We conclude

13 
> that the district court did not abuse its discretion by allowing victims to
> recommend the maximum sentence possible.

14 

15 (Exhibit 101, at pp. 6-7) (footnotes omitted).

16 Petitioner contends that the Nevada Supreme Court's decision was an unreasonable

17 application of *Payne v. Tennessee*, 501 U.S. 808 (1991).  In *Payne*, the United States Supreme Court

18 held that victim impact evidence was not *per se* inadmissible at capital penalty hearings.  501 U.S. at

19 827.  The Court stated that victim impact evidence is not appropriately offered "to encourage

20 comparative judgments."  *Id.* at 823.  Petitioner asserts that this language makes sentencing opinions

21 impermissible victim impact evidence.  (Petition, at p. 57).  Not all sentencing recommendations

22 require comparative judgments.  Even if petitioner's interpretation of *Payne* is correct, *Payne* was a

23 capital case.[2]  *Payne*, 501 U.S. at 817.  Nowhere in *Payne*, or in any other precedent, did the United

24 States Supreme Court hold that the United States Constitution is violated when a victim impact

25 witness at a non-capital penalty hearing makes a specific sentencing recommendation.  Absent such a

26 holding, petitioner cannot demonstrate that the Nevada Supreme Court's decision on this issue was

27 

28 
_____
[2]  The Nevada Supreme Court precludes witness sentencing recommendations in capital
sentencing hearings.  *See Gallego v. State*, 117 Nev. 348, 370, 23 P.3d 227, 242 (2001).

15

1    an unreasonable application of clearly established federal law as determined by the United States

2    Supreme Court.  28 U.S.C. § 2254(d); *Carey v. Musladin*, 549 U.S. 70, 74 (2006) ("'clearly

3    established Federal law' in § 2254(d)(1) 'refers to holdings . . . . of this Court's decisions as of the

4    time of the relevant state-court decision.'" (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000))).

5    Petitioner has failed to meet his burden of proving that the Nevada Supreme Court's ruling was

6    contrary to, or involved an unreasonable application of, clearly established federal law, as

7    determined by the United States Supreme Court, or that the ruling was based on an unreasonable

8    determination of the facts in light of the evidence presented in the state court proceeding.  Federal

9    habeas relief is denied as to Ground 5 of the petition.

10        **E.  Ground Six**

11        Petitioner claims that his constitutional rights to due process of law, a fair trial, and a

12   sentence free from cruel and unusual punishment were violated when the trial court gave an

13   instruction on executive clemency (Penalty Instruction No. 5, at Exhibit 75).  (Petition, at pp. 10-11;

14   pp. 60-62).  This claim was presented on direct appeal, and the Nevada Supreme Court ruled as

15   follows:

16            Echols also contends that the district court erred in instructing the jury
             that a life sentence without the possibility of parole could not be
17           pardoned.

18           NRS 213.085(1) prohibits the state board of pardons commissioners
             from commuting a life sentence without the possibility of parole,
19           meaning that it cannot change the sentence to one allowing parole.
             While NRS 213.085 modifies and limits the power of commutation, it
20           does not address other forms of clemency, including the pardon power.
             Because a life sentence without the possibility of parole can be
21           pardoned, the jury instruction was an incorrect statement of the law.

22           The State asserts that Echols did not preserve the issue for review on
             appeal because he did not object at trial.  Echols argues that the error
23           involves constitutional issues, including Echols' right to due process,
             and a reliable sentence and can be raised even if not objected to at trail.
24           Even if we agreed the error was of constitutional magnitude, it did not
             prejudice Echols or affect any substantial right.  Accordingly, any error
25           would be harmless beyond a reasonable doubt.

26           We said in <u>Geary v. State</u>, [112 Nev. 1434, 1440, 930 P.2d 719, 723-
             24)], that an improper commutation instruction that misleads the jury
27           into believing a sentence of life without the possibility of parole may
             be commuted to life with the possibility of parole is reversible error
28           where the State argues that a defendant poses a future danger to society

16

1

2

3

4

5

> and a harsher sentence, the death penalty, should be imposed.  This
> was not a capital case, and the State never argued future
> dangerousness.  Moreover, the error was in telling the jury life without
> the possibility of parole could not be pardoned, so the jury could not
> have given a harsher sentence on a mistaken theory that Echols was
> eligible for parole or pardon, as occurred in <u>Geary</u>.  Accordingly, we
> conclude any error was harmless because the jury instruction did not
> mislead the jury to Echols' detriment or prejudice Echols.

6   (Exhibit 101, at pp. 4-6).

7        Petitioner contends that the Nevada Supreme Court's decision was an unreasonable

8   application of *Caldwell v. Mississippi*, 472 U.S. 320 (1985) and *Calderon v. Coleman*, 525 U.S. 141

9   (1998).  Both *Caldwell* and *Calderon* are capital cases, and as such, their holdings do not apply to

10   petitioner, for whom the State did not seek the death penalty.  In *Caldwell*, the United States

11   Supreme Court found reversible constitutional error where arguments made in closing led the jury to

12   believe that responsibility for determining the appropriateness of the death penalty rested elsewhere,

13   specifically, with the appellate courts.  472 U.S. at 328-29.  Such error was not present in petitioner's

14   case.

15        In *Coleman*, the Court concluded that it was reversible error to grant habeas relief based on

16   an incorrect commutation instruction without conducting a harmless error review.  525 U.S. at 147.

17   In the present case, the Nevada Supreme Court properly conducted a harmless error review.  The

18   Nevada Supreme Court found the error in this case to be harmless because neither the erroneous

19   instruction nor any argument based on that instruction suggested that a harsher sentence would be

20   appropriate.  (Exhibit 101, at pp. 5-6).  Indeed, such argument was impossible.  This was not a death

21   penalty case and life without the possibility of parole was the harshest sentence that could be

22   imposed.  In contrast to the facts of *Coleman*, where it was implied that a sentence of death was

23   necessary because a sentence of life without parole would be insufficient to keep the defendant

24   imprisoned, the instruction in this case stated that release was impossible when in fact there existed

25   the remote possibility of a pardon.  (Exhibit 101, at pp. 5-6).  Therefore, the error in the instant case

26   was one of describing a sentence of life without parole as harsher than it really was, rather than more

27   lenient.  To the extent that this error had an impact on the jury, that impact could not have been to

28   petitioner's detriment.

1    To obtain federal habeas relief based on an improper jury instruction, petitioner must

2  establish that the instruction so infected the entire trial that the resulting conviction violates due

3  process. *Masoner v. Thurman*, 996 F.2d 1003, 1006 (9th Cir. 1993); *Estelle v. McGuire*, 502 U.S. 62,

4  72 (1991); *Henderson v. Kibbe,* 431 U.S. 145, 154 (1977).  In reviewing jury instructions, the court

5  inquires as to whether the instructions as a whole were misleading or inadequate to guide the jury's

6  deliberation.  *U.S. v. Garcia-Rivera,* 353 F.3d 788, 791 (9th Cir. 2003) (citing *United States v. Frega,*

7  179 F.3d 793, 806 n.16 (9th Cir. 1999) (internal citations omitted).  An instruction may not be judged

8  in isolation, "but must be considered in the context of the instructions as a whole and the trial

9  record." *Id.*  In the instant case, this Court finds that the instruction on executive clemency did not

10  so infect the entire trial as to make the resulting conviction a violation of due process.  Moreover, the

11  instructional error was harmless error, as it did not have a "substantial and injurious effect or

12  influence on the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993).  Petitioner has

13  failed to meet his burden of proving that the Nevada Supreme Court's ruling was contrary to, or

14  involved an unreasonable application of, clearly established federal law, as determined by the United

15  States Supreme Court, or that the ruling was based on an unreasonable determination of the facts in

16  light of the evidence presented in the state court proceeding.  Federal habeas relief is denied as to

17  Ground 6 of the petition.

18    **F.  Ground Seven**

19    Petitioner claims that his constitutional rights to due process and a fair trial were violated

20  when the trial court denied a challenge for cause to prospective juror Schwitters (referred to as "Ms.

21  S" in the petition), who had extrajudicial knowledge of the case.  (Petition, at pp. 11-13; pp. 62-69).

22  Petitioner presented this claim on direct appeal, and the Nevada Supreme Court ruled as follows:

23    On appeal, Echols first asserts that the district court abused its
    discretion in denying his challenge for cause to prospective juror
24    Schwitters.

25    A district court has broad discretion in ruling on challenges for cause.
    A party must show that there was cause to challenge the juror under
26    NRS 175.036(1) and that the party was prejudiced by the district
    court's denial of the challenge.  If the impaneled jury is impartial, the
27    defendant cannot prove prejudice.

28

> In this case, Echols challenged Schwitters for cause based on her exposure to pre-trial publicity and her daughter being an acquaintance of the victim's sister. Schwitters indicated that she believed that she could fairly try the case based on the evidence and set aside any general opinion she had formed from reading the newspaper. She also stated that she understood that newspaper accounts may be inaccurate and that she could evaluate the case based upon the evidence presented at trial, not any general information she may have seen in the media. Schwitters also stated that she had only vague recollections from her prior exposure to the case and that she thought she could be fair. When asked if she was certain she could be fair, she replied that she could not be certain because she could not know for certain until she actually heard the evidence. Based upon this general statement, Echols challenged for cause. Given the totality of Schwitters' comments and placing this answer into context, we conclude that the district court did not err in denying the challenge.

(Exhibit 101, at pp. 1-2) (footnotes, internal quotations, and citations omitted).

Petitioner states in his petition that Schwitters' exposure to pretrial publicity was not a valid basis to excuse her. (Petition, at p. 64). However, petitioner contends that a challenge for cause should have been granted based on the fact that Schwitters' daughter was an acquaintance of the victim's sister. (Petition, at p. 65).

Jurors "need not enter the jury box with empty heads in order to determine the facts impartially." *Skilling v. United States*, 561 U.S. ___, ___, 130 S.Ct. 2896, 2925 (2010). "[T]he mere existence of any preconceived notion as to the guilt or innocence of an accused, without more," is not "sufficient to rebut the presumption of a prospective juror's impartiality." *Irvin v. Dowd*, 366 U.S. 717, 723 (1961). A juror is qualified to serve if he can "lay aside his impression or opinion and render a verdict based on the evidence presented in court." *Id.* Here, prospective juror Schwitters met that standard, stating that although she had heard "things" through the paper and her daughter, she could objectively evaluate the evidence presented in court and decide the defendant's guilt or innocence based on that evidence. (Exhibit 60, at pp. 134-45). It is clear from her examination that her exposure to the case occurred mainly through the newspapers. (*Id.*, at pp. 136-37). Petitioner concedes that her exposure to newspaper articles was an insufficient basis to excuse her. (Petition, at p. 64). Her exposure through her daughter was only to the fact that an affair had allegedly taken place. (Exhibit 60, at pp. 136-37). Because she was able to set aside her previous impressions and

1    render a verdict based only on the evidence presented in court, the challenge for cause was properly

2    denied. *See Irvin*, 366 U.S. at 723.

3         Petitioner fails to show prejudice.  Even if petitioner could show that Schwitters was biased,

4    she did not serve on the jury that convicted petitioner.  (Exhibit 71, at pp. 100-01).  The right to an

5    impartial jury is only violated if an impartial juror actually sits on a jury.  *Ross v. Oklahoma*, 487

6    U.S. 81, 85-86 (1988).  Petitioner asserts that because he was forced to use a peremptory challenge to

7    remove Schwitters, he was unable to excuse another biased juror, Randolph, who served on the jury.

8    While Randolph was sworn in as one of 14 jurors, he was ultimately selected as an alternate.

9    (Exhibit 60, at p. 235; Exhibit 71, at pp. 100-01).  He was not one of the 12 jurors who deliberated or

10   rendered a verdict in petitioner's case.  (Exhibit 71, at pp. 100-01).  Thus, petitioner has no basis

11   upon which to claim that his convictions were the product of a biased jury.  Moreover, even if

12   Randolph had participated in the verdicts, he, like Schwitters was impartial as determined by United

13   States Supreme Court case law.  While Randolph may have opined that it was hard to believe that

14   two shots fired could be accidental (Exhibit 60, at p. 224), he also stated that he had no opinion as to

15   the guilt or innocence of the defendant and that he would review the evidence and make a decision

16   based on the evidence presented (*id.*, at pp. 221, 225).  Nothing more than this can be expected of a

17   juror.  *See Irvin*, 366 U.S. at 723.

18        Finally, petitioner is entitled to relief only if he can establish that the alleged error had a

19   "substantial and injurious effect or influence on the jury's verdict" under the harmless error standard.

20   *See Musladin v. Lamarque*, 555 F.3d 830, 834 (9th Cir. 2009) (quoting and citing *Brecht v.*

21   *Abrahamson*, 507 U.S. 619, 623 (1993)); *see also Mancuso v. Olivarez*, 292 F.3d 939 (9th Cir. 2002)

22   (applying *Brecht* harmless error standard to claim that petitioner was denied right to impartial jury

23   based on exposure to extrinsic evidence).  This Court finds that petitioner has failed to establish that

24   prospective juror Schwitters' extrajudicial knowledge of the case, or Randolph's participation as an

25   alternate juror, had a substantial and injurious effect or influence on the jury's verdict.  Petitioner has

26   failed to meet his burden of proving that the Nevada Supreme Court's ruling was contrary to, or

27   involved an unreasonable application of, clearly established federal law, as determined by the United

28   States Supreme Court, or that the ruling was based on an unreasonable determination of the facts in

1   light of the evidence presented in the state court proceeding.  Federal habeas relief is denied as to

2   Ground 7 of the petition.

3       **G. Ground Eight**

4       Petitioner claims that his constitutional rights were violated based on the cumulative impact

5   of eight incidents of forensic misconduct by the prosecutor, to which trial counsel failed to object.

6   (Petition, at pp. 13-14; pp. 69-77).  Petitioner made this claim on appeal from the denial of his state

7   post-conviction habeas petition and the Nevada Supreme Court ruled as follows:

> [A]ppellant argues that his trial counsel was ineffective for failing to
> object to prosecutorial misconduct when the State made allegations it
> could not prove and made statements in closing arguments that were
> not supported by the evidence.  The district court concluded that
> appellant failed to demonstrate prejudice from the alleged instances of
> misconduct.  Appellant's appendix before this court includes only
> portions of the trial transcripts and appellant did not call witnesses at
> the evidentiary hearing that could have supported these allegations.
> The documents before this court are insufficient to demonstrate that
> the district court erred in concluding that appellant was not prejudiced
> due to counsel's failure to object to prosecutorial misconduct.  It is
> appellant's burden to provide this court with an adequate record for
> review. McConnell v. State, 125 Nev. ___, ___ n.13, 212 P.3d 307,
> 316 n.13 (2009).  Therefore, appellant fails to demonstrate that the
> district court erred in denying this claim.

16  (Exhibit 173, at pp. 3-4).  Petitioner claims that the Nevada Supreme Court's decision was an

17  unreasonable application of *Darden v. Wainwright*, 477 U.S. 168 (1986).

18      In reviewing prosecutorial misconduct claims, the narrow issue that the federal habeas court

19  may consider is whether there was a violation of due process, and not whether there was misconduct

20  under the court's broad exercise of supervisorial power.  *Darden v. Wainwright*, 477 U.S. 168, 181

21  (1986).  The test is whether the conduct "so infected the trial with unfairness as to make the resulting

22  conviction a denial of due process." *Id.* at 180-81 (quoting  *Donnelly v. DeChristoforo*, 416 U.S.

23  637, 643 (1974)).  The Court must distinguish ordinary trial error of a prosecutor from that sort of

24  egregious misconduct which amounts to a constitutional violation of due process.  *Smith v. Phillips*,

25  455 U.S. 209, 221 (1982).  In order to review a claim of prosecutorial misconduct, the court must

26  review the "entire proceedings" to determine whether the misconduct at issue satisfies the

27  requirements of *Darden*.  *Sechrest v. Ignacio*, 549 F.3d 789, 807 (9th Cir. 2008).  The failure of

28  counsel to object to misconduct implies that counsel did not discern any prejudice.  *See Le v. Mullin*,

1   311 F.3d 1002, 1013 (10th Cir. 2002) (while not dispositive, failure to object is relevant on the issue

2   of fundamental fairness).  Where a prosecutorial misconduct claim is waived for failure to object and

3   request an admonition, such failure is a factor in the default of the claim.  *Rich v. Calderon*, 187 F.3d

4   1064, 1070 (9th Cir. 1999).

5          Petitioner asserts that the prosecutor engaged in several instance of misconduct.  Petitioner

6   claims that the prosecution committed misconduct when it cross-examined the victim's ex-wife (Ms.

7   Orci) about her relationship with the victim, contending that the questioning was irrelevant.  The

8   questioning at issue was intended to demonstrate the witness's bias against the victim, and therefore

9   was relevant.  Petitioner alleges that the prosecutor engaged in misconduct when she cross-examined

10  him about facts that the prosecutor could not prove with other witnesses.  Petitioner cites no United

11  States Supreme Court case law holding that such questioning was improper.  Petitioner claims that

12  the prosecutor's statements in closing that "forensics don't lie, people do" was an improper injection

13  of the prosecutor's personal beliefs regarding the comparative credibility of the witnesses.  Such

14  comments were not improper, but were made as the prosecutor compared the forensic evidence

15  presented at trial with petitioner's version of events.  The prosecutor's comments made in closing

16  were not improper.

17         In the present case, the Nevada Supreme Court reviewed the record it had been provided and

18  concluded that petitioner had failed to show that the district court erred when it found that, to the

19  extent they were improper, the alleged instances of misconduct had not resulted in prejudice.

20  (Exhibit 173, at pp. 3-4).  This Court's review of the alleged instances of prosecutorial misconduct

21  reveals that none of the alleged misconduct "so infected the trial with unfairness as to make the

22  resulting conviction a denial of due process."  *See Darden v. Wainwright*, 477 U.S. at 180-81.  In

23  view of the "entire proceedings," there was overwhelming evidence that petitioner took a rifle to the

24  victim's home and shot the victim twice in the head, killing him.  (Exhibit 63, at pp. 12-15, 41-42,

25  178-79, 189-207; Exhibit 67, at pp. 30-44, 123-25, 139-41).  *See Sechrest v. Ignacio*, 549 F.3d at

26  807.

27         Even assuming that the instances of alleged prosecutorial misconduct were improper,

28  petitioner has not shown that counsel was unreasonable for failing to object to the alleged

22

1    misconduct.  Petitioner has made no showing that, had counsel objected to alleged improper

2    questions by the prosecutor on cross-examination or by alleged improper statements during the

3    prosecutor's closing, that the result of the trial would have been different.  Petitioner has not

4    demonstrated that counsel's performance was unreasonable or that he was prejudiced.  Trial counsel

5    was not ineffective under the deferential *Strickland* standard.  *See Harrington v. Richter*, 131 S.Ct.

6    770, 788 (2011).  Petitioner has failed to meet his burden of proving that the Nevada Supreme

7    Court's ruling was contrary to, or involved an unreasonable application of, clearly established federal

8    law, as determined by the United States Supreme Court, or that the ruling was based on an

9    unreasonable determination of the facts in light of the evidence presented in the state court

10   proceeding.  The Court denies habeas relief on Ground Eight of the petition.

11        **H.  Ground Nine**

12        Petitioner claims that his constitutional right to due process was violated because the

13   evidence is insufficient to support his convictions for murder and burglary "as they were pleaded,

14   even though the evidence would have been sufficient had the charges been plead differently."

15   (Petition, at pp. 14-15; pp. 77-85).  Petitioner asserted this claim on direct appeal, and the Nevada

16   Supreme Court ruled as follows:

17            Echols argues that insufficient evidence was adduced to support his
             convictions under the specific theories charged by the State.  We
18            disagree.

19            When the sufficiency of the evidence is challenged on appeal in a
             criminal case, the relevant inquiry for this Court is whether, after
20            viewing the evidence in the light most favorable to the prosecution,
             any rational trier of fact could have found the essential elements of the
21            crimes beyond a reasonable doubt.  Moreover, it is for the jury to
             determine what weight, credibility, and credence to give to witness
22            testimony and other trial evidence.

23            We conclude that sufficient evidence was presented from which the
             jury, acting reasonably and rationally, could have found the elements
24            of first-degree murder with the use of a deadly weapon and burglary
             with the use of a deadly weapon beyond a reasonable doubt.  Evidence
25            was admitted that showed Echols had threatened to kill Albrecht; that
             Echols blamed Albrecht for the break-up of Echols' marriage, and that
26            Echols believed Albrecht was interfering with Echols' relationship
             with his son.  Echols took a rifle to confront Albrecht and Albrecht
27            was shot twice.  Although Echols asserts that the shooting was
             accidental, a reasonable jury could reject this defense and find that

28

23

1

Echols intended to harm or kill Albrecht.  Accordingly, we conclude
that Echols' convictions were supported by substantial evidence.

2

3   (Exhibit 101, at pp. 2-3) (footnotes, internal quotations, and citations omitted) (emphasis in original).

4   When a habeas petitioner challenges the sufficiency of evidence to support his conviction, the

5   court reviews the record to determine "whether, after viewing the evidence in the light most

6   favorable to the prosecution, any rational trier of fact could have found the essential elements of the

7   crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Jones v. Wood*,

8   207 F.3d 557, 563 (9th Cir. 2000).  The *Jackson* standard does not focus on whether a correct guilt or

9   innocence determination was made, but whether the jury made a rational decision to convict or

10   acquit.  *Herrera v. Collins*, 506 U.S. 390, 402 (1993).  Under the *Jackson* standard, the prosecution

11   has no obligation to rule out every hypothesis except guilt.  *Wright v. West*, 505 U.S. 277, 296 (1992)

12   (plurality opinion); *Jackson*, 443 U.S. at 326; *Schell*, 218 F.3d at 1023.  *Jackson* presents "a high

13   standard" to habeas petitioners claiming insufficiency of the evidence.  *Jones v. Wood*, 207 F.3d 557,

14   563 (9th Cir. 2000).

15   Sufficiency claims are limited to a review of the record evidence submitted at trial.  *Herrera*,

16   506 U.S. at 402.  Such claims are judged by the elements defined by state law.  *Jackson*, 443 U.S. at

17   324, n.16).  The reviewing court must respect the exclusive province of the fact-finder to determine

18   the credibility of witnesses, to resolve evidentiary conflicts, and to draw reasonable inferences from

19   proven facts.  *United States v. Hubbard*, 96 F.3d 1223, 1226 (9th Cir. 1996).  The district court must

20   assume the trier of fact resolved any evidentiary conflicts in favor of the prosecution, even if the

21   determination does not appear on the record, and must defer to that resolution.  *Jackson*, 443, U.S. at

22   326.  The United States Supreme Court has recently held that "the only question under *Jackson* is

23   whether [the jury's] finding was so insupportable as to fall below the threshold of bare rationality."

24   *Coleman v. Johnson*, 132 S.Ct. 2060, 2065, ___U.S. ___ (per curium) (2012).

25   In this case, the evidence was sufficient to support petitioner's convictions.  Petitioner does

26   not claim that there was insufficient evidence to convict him of burglary and first-degree murder.

27   Instead, he argues that, because there was insufficient evidence to convict him of two of the three

28   possible theories of burglary, his convictions are invalid.  (Petition, at pp. 79-81).

1       Petitioner was charged with first-degree murder under two alternative theories: (1) he

2  committed willful, deliberate, and premeditated murder; or (2) he was guilty of felony murder based

3  on burglary.  (Exhibit 13, at p. 2).  The burglary charge was also written in the alternative, alleging

4  that petitioner entered the victim's residence with the intent to commit (1) an assault, (2) a battery, or

5  (3) murder.  (*Id.*, at p. 3).  Petitioner claims that the State was required to prove all of the charged

6  theories in order to obtain a conviction.  (Petition, at p. 79).  Petitioner asserts that there is no

7  evidence that he intended to assault or batter the victim when he entered the residence, and that there

8  is insufficient evidence for two of the three charged theories of burglary.  Petitioner further asserts

9  that because some of the theories of burglary are unsupported by the evidence, some of the theories

10  of felony-murder are likewise unsupported by the evidence.  (Petition, at pp. 80-81).  Petitioner

11  argues that the Nevada Supreme Court's rejection of this claim was an unreasonable application of

12  *Griffin v. United States*, 502 U.S. 46 (1991)*; Stromberg v. California*, 283 U.S. 359 (1931); and

13  *Yates v. United States*, 354 U.S. 298 (1957), *overruled on other grounds by Burks v. United States*,

14  437 U.S. 1 (1978).

15       Petitioner's claim that there was no evidence of his intent to commit assault or battery is

16  belied by the record.  Petitioner's prior physical altercations with the victim (Exhibit 67, at pp. 68-

17  70) and the fact that he brought a loaded gun to the victim's home (Exhibit 67, at p. 125) are more

18  than sufficient circumstantial evidence of his intent.

19       The *Yates* and *Stromberg* cases stand for the rule that when a defendant is charged with

20  multiple theories, one of which is legally invalid or theoretically impossible, and a conviction is

21  returned on a general verdict, the verdict must be set aside.  *Yates*, 354 U.S. at 312; *Stromberg*, 283

22  U.S. at 367-68.  The Nevada Supreme Court's ruling did not run afoul of the holdings of *Yates* and

23  *Stromberg,* because all theories of liability charged by the State were legally valid.  In *Griffin*, the

24  United States Supreme Court declined to extend that rule, holding that because a jury is presumed

25  capable of evaluating the evidence before it, a conviction should be upheld even when the evidence

26  does not support all of the charged theories, as long as the charged theories are legally valid.  502

27  U.S. at 59-60.  Petitioner's claim is foreclosed by the holding in *Griffin*, and the Nevada Supreme

28  Court did not err in rejecting petitioner's claim.

Petitioner contends that the presumption in *Griffin* that a jury is equipped to evaluate the evidence presented to it is a rebuttable presumption.  (Petition, at p. 83).  Petitioner cites to out-of-circuit federal and state court decisions for this proposition.  Petitioner cites no decision of the United States Supreme Court that holds the presumption in *Griffin* is a rebuttable presumption.  Even assuming the presumption is rebuttable, petitioner has not presented sufficient evidence to overcome the presumption in this case.

The Nevada Supreme Court found that "sufficient evidence was presented from which the jury, acting reasonably and rationally, could have found the elements of first-degree murder with the use of a deadly weapon and burglary with the use of a deadly weapon beyond a reasonable doubt." (Exhibit 101, at p. 3).  The Nevada Supreme Court found that "evidence was admitted that showed Echols had threatened to kill Albrecht; that Echols blamed Albrecht for the break-up of Echols' marriage, and that Echols believed Albrecht was interfering with Echols' relationship with his son. Echols took a rifle to confront Albrecht and Albrecht was shot twice."  (*Id.*).  Based on this evidence, the Nevada Supreme Court concluded that "a reasonable jury could  . . . find that Echols intended to harm or kill Albrecht."  (*Id.*)  This satisfies the rule in *Jackson*, that "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  Petitioner has failed to meet his burden of proving that the Nevada Supreme Court's ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  Federal habeas relief is denied as to Ground 9 of the petition.

## IV.  Certificate of Appealability

In order to proceed with his appeal, petitioner must receive a certificate of appealability. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th Cir. R. 22-1;  *Allen v. Ornoski,* 435 F.3d 946, 950-951 (9th Cir. 2006); s*ee also United States v. Mikels*, 236 F.3d 550, 551-52 (9th Cir. 2001).  District courts are required to rule on the certificate of appealability in the order disposing of a proceeding adversely to the petitioner or movant, rather than waiting for a notice of appeal and request for certificate of appealability to be filed.  Rule 11(a) of the Rules Governing Section 2254 and 2255

Cases.  Generally, a petitioner must make "a substantial showing of the denial of a constitutional right" to warrant a certificate of appealability.  28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).  "The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* (*quoting Slack*, 529 U.S. at 484).  In order to meet this threshold inquiry, the petitioner has the burden of demonstrating that the issues are debatable among jurists of reason; that a court could resolve the issues differently; or that the questions are adequate to deserve encouragement to proceed further. *Id.*  In this case, no reasonable jurist would find this Court's denial of habeas relief debatable or wrong.  The Court therefore denies petitioner a certificate of appealability.

## V.  Conclusion

**IT IS THEREFORE ORDERED** that the petition for a writ of habeas corpus is **DENIED IN ITS ENTIRETY**.

**IT IS FURTHER ORDERED** that petitioner is **DENIED A CERTIFICATE OF APPEALABILITY.**

**IT IS FURTHER ORDERED** that the Clerk **SHALL ENTER JUDGMENT ACCORDINGLY.**

DATED this 29th day of August, 2013.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE

27